# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**MICHELLE KOON,**

       **Plaintiff,**

**v.**                                            **Civil Action No. 3:14CV8**
                                                         **(The Honorable Gina M. Groh)**

 **COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## REPORT AND RECOMMENDATION/OPINION

This action is for judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant" and sometimes "Commissioner"), denying Michelle Koon's ("Plaintiff") claim for supplemental security income benefits ("SSI") under Title XVI of the Social Security Act. The matter is awaiting decision on cross motions for summary judgment and has been referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommended disposition. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b); L.R. Civ. P. 9.02.

## I. PROCEDURAL HISTORY

Plaintiff filed her application on November 2, 2010, alleging disability since July 22, 2009. (R. 104, 126). On February 8, 2011, Plaintiff amended her alleged onset date to October 27, 2010. (R. 111). Her application was denied initially on February 2, 2011, and upon reconsideration on April 28, 2011 (R. 57, 58). Plaintiff timely filed a request for a hearing, which Administrative Law Judge ("ALJ") Jeffrey P. La Vicka held on June 20, 2012 (R. 31-56). ALJ La Vicka issued an unfavorable decision on June 29, 2012 (R. 18-27). Plaintiff timely appealed this decision to the Appeals Council. Her application was denied by the Appeals Council on November 29, 2013, making this the final decision of the Commissioner (R. 1-5).

## II. FACTS

Plaintiff was born on May 6, 1980, and was thirty-two (32) years old on the date of her hearing (R. 36). Plaintiff completed a ninth grade education and had attempted but failed the general education diploma (GED) test on two occasions (R. 40). Plaintiff is married with two children who live with her and two children who live with their father. (R. 37-38). Plaintiff's past employment included transporting dialysis patients and telemarketer (R. 42, 43). Plaintiff had brain surgery in August of 2008. Plaintiff alleged that she became unable to work as of October 27, 2010 due to secondary Chari-I malformation, chronic headaches, irritable bowel syndrome, asthma, obesity and personality disorder. Plaintiff did not contend that any of the severe impairments meet or equal a listing. (R. 35). A hearing was held on June 20, 2012, to determine whether the Plaintiff was disabled under the Social Security Act. The Plaintiff and a vocational expert ("VE"), Larry Bell, testified. Mr. Bell testified that he had a masters of science degree in rehabilitation counseling from West Virginia University, thirty-seven years experience in the field of rehabilitation and has worked contractually with the Social Security Administration for thirteen years. (R. 51). After Mr. Bell was designated as the vocational expert without objection from the parties at the hearing, the dialog with the VE was as follows:

> Q Mr. Bell, you have been present throughout the claimant's testimony?
> A Yes.
> Q Please identify any exhibits you reviewed in the file.
> A All of the "E" Exhibits.   ...
> Q Is your testimony also based on your knowledge, education, training and experience as well as the Dictionary of Occupational Titles, which I will refer to as the DOT?
> A Yes....

(R. 52.)

When asked to characterize Plaintiff's past relevant work the VE stated as follows:

> A Her work as a telemarketer is sedentary and semi-skilled, SVP-3, 299.357-014. Her work as a driver is, according to the DOT, is usually performed medium and semi-skilled, SVP-3. But as described in the file, it was at the light level; 913.663-018

The ALJ proceeded to ask the following hypothetical questions:

> Q Mr. Bell, assume a hypothetical individual of the same age, education and work experience of the claimant, retains the capacity to perform light work with a sit/stand option, allowing the person to briefly for one to two minutes alternate sitting or standing positions at 30-minute intervals without going off task. Who is limited to occasional posturals, except no climbing of ladders, ropes or scaffolds. Who is limited to frequent reaching bilaterally, no overhead reaching bilaterally. Must avoid concentrated exposure to extreme cold and heat. Must avoid concentrated exposure to excessive vibration. Must avoid all exposure to unprotected heights, hazardous machinery and commercial driving. Whose work is limited to simple, routine and repetitive tasks, requiring only simple decisions, free of fast-paced production requirements, with few workplace changes. Only occasional interaction with the public and co-workers. And the work site must be located within 100 feet of a restroom. Can such an individual perform the past work of the claimant as it was actually performed or as it is customarily performed per the DOT?
> A No, Your Honor.
> Q Are there other jobs in the regional or national economy that such an individual could perform?
> A Yes, Your Honor. At the light level, I believe the hypothetical individual could function as an office cleaner, light and unskilled, SVP-2; 100,000 nationally, 2,400 regionally. It's 323.687-014. Or a garment sorter, marker, light and unskilled, SVP-2, 90,000 nationally, 1,100 regionally; 222.687-014.
> Q Are those the only jobs such an individual could perform or a sampling of the jobs an individual could perform?
> A Be a sampling, Your Honor

(R. 53-54).

The ALJ further inquired as to the customary tolerances of employers to unexcused, unscheduled absences; the customary number and length of breaks, and customary allowances for being off task. (R. 54-55).

3

In conclusion of the hearing, the ALJ asked the VE as follows:

> Q Has all your testimony today been consistent with your experience and the DOT?
> A I believe it is, sir.

(R. 55).

The ALJ then gave the attorney for the Plaintiff an opportunity to cross exam the VE.

> ALJ: Ms. Tumly, do you have any questions for Mr. Bell?
> ATTY: No, Your Honor, I do not.
> ALJ: Is there anything else that either you or Ms. Koon would like to share with me before I take this case under advisement?
> ATTY: No, Your Honor.

(R. 55).

## III. ADMINISTRATIVE LAW JUDGE DECISION

Utilizing the five-step sequential evaluation process prescribed in the Commissioner's regulations at 20 C.F.R. § 416.920 (1997), ALJ Jeffrey P. La Vicka made the following findings:

1. **The claimant meets the insured status requirements of the Social Security Act through June 30, 2013.**

2. **The claimant has not engaged in substantial gainful activity since October 27, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*).**

3. **The claimant has the following severe impairments: Chari malformation type I; headaches; obesity; irritable bowel syndrome ("IBS"); asthma; and personality disorder (20 CFR 404.1520(c)).**

4. **The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**

5. **The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the type of work must: provide a sit/stand option, allowing the person to change between sitting and standing for one to two minutes at 30 minute intervals without breaking task; entail no climbing ladders/ropes/scaffolds and no more**

4

**than occasional other postural movements (i.e. climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling); entail no bilateral overhead reaching and only frequent bilateral reaching in all other directions; entail no exposure to hazards (i.e. unprotected heights or dangerous machinery) and no concentrated exposure to extreme hot and cold temperatures or vibration; provide a work station no more than a 100 feet from a restroom; be limited to simple, routine, and repetitive tasks in a work environment free of fast paced production and involving simple work-related decisions with few work place changes; and entail no more than occasional interaction with the public and co-workers.**

6. **The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

7. **The claimant was born on May 6, 1980 and was 30 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).**

8. **The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).**

9. **Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).**

10. **Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).**

## IV.  DISCUSSION

### A.  Scope of Review

In reviewing an administrative finding of no disability the scope of review is limited to determining whether "the findings of the Secretary are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co.*

5

*v. NLRB*, 305 U.S. 197, 229 (1938)). Elaborating on this definition, the Fourth Circuit has stated that substantial evidence "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990), (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1968)). In reviewing the Secretary's decision, the reviewing court must also consider whether the administrative law judge applied the proper standards of law: "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

### B. Contentions of the Parties

**Plaintiff contends**: The ALJ failed to resolve the inconsistencies between The Dictionary of Occupational Titles and the vocational expert's testimony, as required by Social Security Ruling 00-4p. (Plaintiff's brief at p. 2). Specifically, the Plaintiff alleges that:

> While the hearing transcript reveals that the ALJ asked the vocational expert whether his testimony was consistent with the DOT, the ALJ did not investigate further the inconsistencies that were plainly apparent in this testimony and that required further explanation.

(Plaintiff's brief at p. 8).

**The Commissioner contends:** There is no conflict between the vocational expert's testimony and the DOT and that the ALJ fulfilled his duty to inquire about any conflicts with the DOT. The ALJ properly relied on the VE's testimony in response to an appropriate hypothetical question (Defendant's brief at p. 5).

## C. Legal Analysis

Where there is a demonstrated impairment, the Commissioner must produce a VE to testify that the claimant retains the ability to perform specific jobs that exist in the national economy. See Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983). The VE's testimony must be based on all of the evidence of record and must be in response to a proper hypothetical question that fairly sets forth all of a claimant's impairments. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). The Commissioner may not rely upon the VE's answer to a hypothetical question if the hypothesis fails to fit the facts. Hincher v. Barnhart, 362 F. Supp. 2d 706, 712 (W.D. Va. 2005).

In this case, the ALJ gave a detailed residual functional capacity assessment that limited Plaintiff to light work with the following restrictions:

> **provide a sit/stand option, allowing the person to change between sitting and standing for one to two minutes at 30 minute intervals without breaking task; entail no climbing ladders/ropes/scaffolds and no more than occasional other postural movements (i.e. climbing ramps or stairs, balancing, stooping, kneeling, crouching, or crawling); entail no bilateral overhead reaching and only frequent bilateral reaching in all other directions; entail no exposure to hazards (i.e. unprotected heights or dangerous machinery) and no concentrated exposure to extreme hot and cold temperatures or vibration; provide a work station no more than a 100 feet from a restroom; be limited to simple, routine, and repetitive tasks in a work environment free of fast paced production and involving simple work-related decisions with few work place changes; and entail no more than occasional interaction with the public and co-workers**.

(R. 21). At the hearing, the ALJ asked the VE a hypothetical with this RFC. (R. 55). Additionally, the ALJ inquired as to the customary tolerances of employers to unexcused,

7

unscheduled absences; the customary number and length of breaks, and customary allowances for being off task. (R. 54-55)

When relying on VE testimony to support a disability determination, the ALJ is required to "[i]dentify and obtain a reasonable explanation between occupational evidence provided by [vocational experts] and information in the [DOT]." SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000) (alteration in original). "When a [vocational expert] provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that . . . evidence and information provided in the DOT." Id. at *4 (alteration in original). If a conflict is apparent, the ALJ has the duty to obtain a reasonable explanation for the conflict before relying on the VE's testimony. Id.; see also Terry v. Astrue, 580 F.3d 471, 478 (7th Cir. 2009) (stating that "SSR 00-4p requires the ALJ to obtain an explanation only when the conflict between the DOT and the VE's testimony is 'apparent'"); Fisher v. Barnhart, 181 F. App'x 359, 366, 2006 WL 1328700, at *7 (4th Cir. May 16, 2006) (stating that an ALJ abides by SSR 00-4p when he inquires on the record whether VE testimony is consistent with the DOT). If the VE denies any conflicts when asked by the ALJ, the ALJ's duty ends. Martin v. Comm'r of Soc. Sec., 170 F. App'x 369, 374-75, 2006 WL 509393, at *4-5 (6th Cir. Mar. 1, 2006).

In this case the ALJ asked the VE as follows:

> Q Has all your testimony today been consistent with your experience and the DOT?
> A I believe it is, sir.

(R. 55). The Plaintiff does not dispute that " the ALJ asked the vocational expert whether his testimony was consistent with the DOT" complying with the first prong of the ALJ's duties with

8

regard to the VE testimony. (Plaintiff's brief at p. 8). However, Plaintiff alleges that there were plainly "apparent inconsistencies" between the VE testimony and the DOT; therefore, the ALJ had a duty to inquire further to explain the apparent inconsistencies. (*Id.*).

In her brief, Plaintiff specifically noted three "plainly apparent" inconsistencies: (1) the need for a sit/stand option (2) need for a restroom within 100 feet of the plaintiff's workstation and (3) no bilateral overhead reaching. This argument was not made at the hearing before the ALJ. (Plaintiff's brief at p. 8-9). In fact, Plaintiff's counsel had no questions for the VE at the hearing. (R. 55). Further, there is no explanation in Plaintiff's brief regarding the inconsistency between these three limitations and the jobs chosen by the VE.

A claimant may bring a VE's mistake to the ALJ's attention; however, "[n]othing in SSR 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct." Terry, 508 F.3d at 478. Claimants "should not be permitted to scan the record for . . . unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." Young v. U.S. Comm'r of Soc. Sec., No. CV08-0474, 2009 WL 2827945, at *13 (W.D. La. Sept. 1, 2009) (citing Carey v. Apfel, 230 F.3d 131, 142 (5th Cir. 2000)).

As noted in the record, Plaintiff's advocate had ample opportunity to cross-examine the VE at the hearing before the ALJ, and decided not to ask any questions. (R. at 55). The VE testified that there were no inconsistencies and Plaintiff's advocate did not inquire about any possible conflicts between the VE's testimony and the DOT and its companion volume, Selected

9

Characteristics of Occupations ("SCO"). Therefore, Plaintiff should not be allowed to present this as "reversible error, when the conflict was not deemed sufficient enough to merit adversarial development in the administrative hearing." Young, 2009 WL 2827945, at *13.

Further, courts have recognized that the DOT's maximum requirements do not necessarily create conflicts and that ALJs are entitled to rely on VE testimony even if the VE's conclusions differ from the DOT. See, e.g., Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005) (despite "minor inconsistencies," VE testimony can still provide substantial evidence for an ALJ's conclusions); Boone v. Barnhart, 353 F.3d 203, 206 (3d Cir. 2003) (declining to adopt a "general rule that an unexplained conflict between a VE's testimony and the DOT necessarily requires reversal"). The DOT's definitions are "simply generic job descriptions that offer 'the approximate maximum requirements for each position, rather than their range.'" Hall v. Chater, 109 F.3d 1255, 1259 (8th Cir. 1997) (quoting Jones v. Chater, 72 F.3d 81, 82 (8th Cir. 1995)). The DOT itself warns that its descriptions "may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities." DOT, vol. 1, at xiii. "[N]ot all the jobs in every category have requirements identical to or as rigorous as those listed in the DOT." Hall, 109 F.3d at 1259.

Plaintiff cites to Martell v. Astrue, 2010 U.S. Dist. LEXIS 139319, 88-89 (N.D. W.Va. September 21, 2010) for the proposition that the ALJ has an affirmative duty to inquire about conflicts. However, this case does not stand for that proposition. Magistrate Judge Seibert found in Martell that "Upon review of the hearing transcript, the Court did not find, nor did the Commissioner reference, any inquiry by the ALJ regarding possible inconsistencies between the VE's testimony and the DOT. (*Id.* at 48).

Here, the record is clear that the ALJ met his responsibility of inquiring of the VE regarding any conflicts between the DOT and his testimony. The ALJ specifically asked, "Has all your testimony today been consistent with your experience and the DOT?" (R. at 55.) The VE replied, "I believe it is, sir. ." (Id.) Therefore, the ALJ abided by SSR 00-4p by asking the VE whether his testimony was consistent with the DOT. See Fisher, 181 F. App'x at 366, 2006 WL 1328700, at *7. Accordingly, the ALJ's duty ended when the VE denied any inconsistencies or conflicts. Martin, 170 F. App'x at 374-75, 2006 WL 509393, at *4-5. The ALJ had no "affirmative duty . . . to conduct an independent investigation into the testimony of [the VE] to determine if [he was] correct." Terry, 580 F.3d at 478.

Defense counsel cites to Parsons v. Astrue, No. 1:09-166, 2010 WL 2720769*23 (N.D. W.Va. May 18, 2010), which is factually more similar to this case. In Parsons, the ALJ asked whether there were any inconsistencies and the VE responded that there were none. (*Id*.). During the administrative hearing, Plaintiff's counsel did not bring any mistake to the attention of the ALJ. (*Id*.). Magistrate Judge Seibert affirmed the ALJ's decision in the Parsons' case and the District Judge adopted his Report and Recommendation.

Due to Plaintiff's failure to identify any conflict at the hearing, "she would have to show that the conflict was 'obvious enough that the ALJ should have picked up on [it] without any assistance.'" Id. (quoting Overman v. Astrue, 546 F.3d 456, 462-63 (7th Cir. 2008)). Plaintiff has not presented any evidence explaining why she could not perform the jobs identified by the VE based upon her ability to sit and stand, the need for a restroom within 100 feet of her workstation and barred overhead reaching. Plaintiff's counsel did not question the VE during the hearing regarding the impact of these limitations. See Ruff, 2013 WL 4487502, at *8.

Because Plaintiff did not present any conflict to the ALJ, "...the ALJ did not need to explain how the conflict was resolved." Boggs v. Astrue, No. 2:12-cv-25, 2012 WL 5494566, at *7 (N.D. W. Va. Nov. 13, 2012). Furthermore, the ALJ was entitled to rely on the VE's response to the ALJ's inquiry regarding the consistency of his testimony and the DOT.

Given this, the undersigned finds that Plaintiff's argument is without merit. Accordingly, substantial evidence supports the ALJ's determination that a significant number of jobs in one or more occupations exist in the national economy that Plaintiff can perform and there was no legal error.

## VI.  RECOMMENDED DECISION

For the foregoing reasons, I recommend that:

1. Plaintiff's Motion [11] for Summary Judgment be **DENIED** because the ALJ did not err in relying on the VE's testimony, did not violate SSR 00-4p, and his conclusions are supported by substantial evidence.

2. Commissioner's Motion [12] for Summary Judgment be **GRANTED** for the same reason set forth above.

Any party may, within fourteen (14) days after being served with a copy of this Recommendation for Disposition, file with the Clerk of the Court written objections identifying the portions of the Proposed Findings of Fact and Recommendation for Disposition to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to the Proposed Findings of Fact and Recommendation for Disposition set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such

proposed findings and recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail an authenticated copy of this Report and Recommendation to counsel of record

Respectfully submitted this 16th day of September , 2014.

_____
ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE